## H. B. SMITH MACHINE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7519.    Promulgated June 24, 1927.

The petitioner was affiliated with the Smith Estate Corporation during the year 1919.

*Joseph R. Little, Esq.,* and *Theodore B. Benson, Esq.,* for the petitioner.

*J. Harry Byrne, Esq.,* for the respondent.

This proceeding results from the determination of a deficiency in income and profits taxes for the year 1919, in the amount of $8,924.33. Error is assigned in the refusal of the Commissioner to compute the tax liability of petitioner and the Smith Estate Corporation as affiliated corporations, pursuant to the provisions of section 240 of the Revenue Act of 1918. An alternative error is assigned in the event the petitioner is not ruled affiliated with the Smith Estate Corporation, in that the Commissioner is attempting to assess alleged deficiencies subsequent to the running of the statute of limitations.

### FINDINGS OF FACT.

Petitioner is a corporation, organized in 1878, under the laws of the State of New Jersey, to acquire the business previously conducted

as a sole proprietorship by Hesekiah B. Smith. The latter owned and controlled practically all of the stock of petitioner, from the date of incorporation until his death in 1887. In his last will and testament, he bequeathed his entire estate to nine trustees for the purpose of establishing a school for mechanics. Elton A. Smith, his son, contested the provisions of the will. The contest lasted approximately ten years with the litigation resulting in favor of Elton A. Smith. During the contest of the will, the business of petitioner was not prosperous and became heavily involved financially. The business of petitioner was managed by Elton A. Smith from 1898 to the year of his death in 1917. The business was operated by Elton A. Smith practically as a sole proprietorship. During his lifetime, he advanced large sums of money to rehabilitate and maintain the business and endorsed the notes of petitioner, in order that it might secure credit from financial institutions.

In 1904, Elton A. Smith sold to the petitioner the machine shop used by it, receiving in payment therefor bonds of the petitioner to the value of $70,000 out of an issue of $150,000. The remainder, $80,000 of these bonds, were issued to him in payment for loans and advances. The bonds were held by him at the time of his death.

Upon the death of Elton A. Smith in 1917, the petitioner found itself in a precarious financial condition—the banks refused to make loans to petitioner, and creditors demanded the payment of all due accounts. It became necessary to develop some plan whereby financial assistance could be rendered to petitioner, in order that it might thus continue in business. For this purpose, there was organized in January, 1917, the Smith Estate Corporation, the entire stock of which was held by the heirs of Elton A. Smith.

The articles of incorporation of the Smith Estate Corporation, state it was organized for the object and purpose of holding the property of Elton A. Smith, including stocks, bonds and surplus of petitioner; to endorse and guarantee notes, contracts, bonds, or other surplus of petitioner; to assist and further the business of petitioner; to purchase and acquire and to sell and dispose of real and personal property, and to invest its surplus in property.

The financial assistance extended to petitioner by Elton A. Smith during his lifetime, was continued by Smith Estate Corporation, which guaranteed the repayment of all loans made to petitioner by the banks.

At the date of the death of Elton A. Smith and organization of the Smith Estate Corporation, the liabilities of petitioner, other than for merchandise were:

| | |
|---|---|
| Due banks | $59,000.00 |
| Due Elton A. Smith | 43,034.13 |
| Bonded indebtedness | 150,000.00 |

The bonds were owned by Elton A. Smith and the bank loans were endorsed by him.

The facilities of the petitioner and Smith Estate Corporation were exchanged to their mutual benefit and without charge. The books of account of the latter were kept by an employee of the former. Bills of the one were paid by the other with no interest being charged for the advances, and the services of employees were exchanged when necessity therefor arose.

The stockholders' meetings of both corporations were only attended by Smith interests and no objection has ever been made by any stockholder to the management or conduct of the business.

During the year 1919 the stockholders and their stockholdings in the petitioner were as follows:

| Name | Relationship | Common shares | Per cent | Preferred shares | Per cent | Per cent to whole |
|---|---|---|---|---|---|---|
| M. A. O'Byrne [1] | Brother-in-law of E. A. Smith and uncle of his heirs. | 35 | 3.5 | 32 | 1.67 | 2.280 |
| Elton Allen Smith [1] | Son of Elton A. Smith and stockholder, Smith Estate Corporation. | 135 | 13.5 | | | 4.595 |
| Erle J. Smith | Son of Elton A. Smith and stockholder, Smith Estate Corporation. | 115 | 11.5 | | | 3.914 |
| Smith Est. Corp | Affiliate | 291 | 29.1 | 1,750 | 90.16 | 69.475 |
| Wm. S. Kelley | Employee | 99 | 9.9 | 28 | 1.46 | 4.323 |
| Geo. D. Field | Employee, brother-in-law of H. B. Smith. | 65 | 6.5 | | | 2.212 |
| Clara A. Field | Wife of Geo. D. Field | 38 | 3.8 | | | 1.295 |
| Geo. A. Lippincott | Employee | 10 | 1 | | | .340 |
| Bradford W. Story | ----do---- | 5 | .5 | | | .170 |
| Edward F. Burns | ----do---- | 1 | .1 | | | .034 |
| A. M. Hall | ----do---- | 1 | .1 | | | .034 |
| S. P. Comegys | ----do---- | 1 | .1 | | | .034 |
| W. D. Martin | ----do---- | 1 | .1 | | | .034 |
| W. A. Whiting | ----do---- | 1 | .1 | | | .034 |
| Thos. R. Finley | ----do---- | 1 | .1 | | | .034 |
| Jos. L. Sullivan | Insurance agent for the company | | | 10 | .53 | .340 |
| Jos. H. Gaskill | Lawyer, attorney for both corporations. | 35 | 3.5 | 22 | 1.15 | 1.940 |
| Cortland Parker | Lawyer, attorney for Elton A. Smith | 35 | 3.5 | 32 | 1.66 | 2.280 |
| Wm. E. Johnson | Lawyer, attorney for Elton A. Smith | 35 | 3.5 | 32 | 1.66 | 2.280 |
| Julia Grey Dayton | | 6 | .6 | 6 | .32 | .408 |
| Mary J. Grey Reeve | | 7 | .7 | 6 | .32 | .442 |
| Norman Grey | Heirs of Samuel Grey, attorney for Elton A. Smith. | 3 | .3 | 2 | .11 | .170 |
| Isabel Grey Chew | | 3 | .3 | 3 | .16 | .204 |
| Jane Grey Potter | | 3 | .3 | 3 | .16 | .204 |
| Alice C. Grey Bergen | | 7 | .7 | 6 | .32 | .442 |
| Ethel Potts Grey | | 6 | .6 | 6 | .32 | .408 |
| Chas. A. Chickering | Former employee | 5 | .5 | | | .170 |
| Mrs. R. B. Marron | Widow of employee | 12 | 1.2 | | | .408 |
| Mary Trowbridge | Heirs of Agnes M. Smith, sister of Geo. D. Field. | 19 | 1.9 | | | .646 |
| Flora Somers | | 19 | 1.9 | | | .646 |
| Chas. Coles | | 5 | .5 | | | .170 |
| Est. of Theo. B. Gaskill | | 1 | .1 | | | .034 |

[1] Trustees Smith Est. Corp. stock.

The preferred stock had full voting rights and was cumulative as to dividends. The dividend rate was 8 per cent. No dividends on the preferred stock were ever paid.

During the year 1919, the stockholders and their holdings in the Smith Estate Corporation, were:

| Name | Relationship | Common | |
|---|---|---|---|
| | | Shares | Per cent |
| Elton Allen Smith | Heir of Capt. Smith | 9 | 14. 28⁴/₇ |
| Erle J. Smith | ___do___ | 9 | 14. 28⁴/₇ |
| Regis Smith Hetzler | ___do___ | 9 | 14. 28⁴/₇ |
| Hilda Smith | ___do___ | 9 | 14. 28⁴/₇ |
| Elizabeth Smith | ___do___ | 9 | 14. 28⁴/₇ |
| Verona Smith Pie | ___do___ | 9 | 14. 28⁴/₇ |
| Lois Smith | ___do___ | 9 | 14. 28⁴/₇ |
| | | 63 | |

The control of the stock of the Smith Estate Corporation was vested in a voting trust provided for in its articles of incorporation. This trust had as its object the keeping of the funds of the estate intact. The trustees, during 1919 were M. A. O'Byrne, brother-in-law of Elton A. Smith and a stockholder in petitioner; Theodore Hetzler, son-in-law of Elton A. Smith and husband of Regis Smith Hetzler, heir of Elton A. Smith and E. A. Smith, son and heir of Elton A. Smith and stockholder in petitioner.

OPINION.

MILLIKEN: We stated in the *Appeal of Hagerstown Shoe & Legging Co.*, 1 B. T. A. 666, "these problems [affiliation] are not flat mathematical or legalistic puzzles." Nor should we look to a tabulated statement of the percentages of stock ownership and if there appears a slight divergency in stock ownership or perchance some small minority interest that owns stock in one corporation and not in another, stop in our consideration of the problem and say such facts control our decision. All the facts must be taken into account. We find in this case that Elton A. Smith was the dominating force and owned and controlled substantially all of the stock of petitioner during his lifetime. He conducted the business practically as a sole proprietorship. He supplied the funds without which it could not have continued in business. It is true that he had from time to time permitted certain of his trustworthy employees to subscribe for small blocks of stock. They represented no virile minority; they were entirely quiescent. They were more interested in the employment which petitioner afforded to them than in a voice or control in its management. Upon the death of Elton A. Smith, petitioner, being without his financial assistance, was in a precarious condi-

tion. The Smith Estate Corporation was a child of necessity; it was to and did fill the place theretofore occupied by Elton A. Smith. The two corporations were an economic unit. One used the facilities of the other—money was advanced by one to the other without interest charges. The employees of one were freely used by the other without reimbursement. We are of the opinion that the small minority stockholdings should be disregarded in this case and that petitioner and the Smith Estate Corporation were affiliated corporations within the purview of section 240 of the Revenue Act of 1918.

The decision reached relative to the first issue renders unnecessary a discussion or decision concerning the second issue.

*Judgment will be entered on 15 days' notice, under Rule 50.*